UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL YOUNG,                                    :

                 Petitioner,           :           **OPINION**

          - v -                            :           20-cv-2172 (DC)

JAIFA COLLADO, Superintendent of                  :
Shawangunk Correctional Facility,

                                :

                Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          MICHAEL YOUNG
                          Petitioner *Pro Se*
                          DIN 15A3585
                          Shawangunk Correctional Facility
                          P.O. Box 700
                          200 Quick Road
                          Wallkill, NY 12589

                          MICHAEL E. MCMAHON, Esq.
                          District Attorney, Richmond County
                          By:     Thomas B. Litsky, Esq.
                                   Assistant District Attorney
                          130 Stuyvesant Place
                          Staten Island, NY 10301
                                   Attorney for Respondent

CHIN, Circuit Judge:

         On August 17, 2015, following a jury trial, petitioner Michael Young was

convicted in the Supreme Court of New York, Richmond County (Garnett, *J.*), of

second-degree murder in violation of N.Y. Penal Law § 125.25(1).  Dkt. 16 at 1.  The

court sentenced Young to an indeterminate term of imprisonment of twenty-five years to life. *Id.* at 1-2. The Appellate Division, Second Department affirmed his conviction, *People v. Young*, 91 N.Y.S.3d 253 (2d Dep't 2019) ("*Young I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Young*, 123 N.E.3d 829 (N.Y. 2019) (Fahey, J.) ("*Young II*").

On April 14, 2020, proceeding *pro se*, Young filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10. Dkt. 16-2 at 219. The Richmond County Supreme Court (Garnett, J.) denied the motion, *id.* at 244-45, and Appellate Division denied leave to appeal. Dkt. 16 at 19.

On May 6, 2020, proceeding *pro se*, Young filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") in this Court. Dkt. 1. Young contends that (1) the evidence of his guilt was legally insufficient and the verdict against the weight of the evidence; (2) several of the trial court's evidentiary rulings denied him a fair trial; (3) the admission of a detective's testimony concerning his conversation with a non-testifying witness violated his confrontation right; (4) trial counsel was ineffective; (5) the prosecutor's summation denied him a fair trial; and (6) a buccal swab application submitted by the prosecution violated his Fourth Amendment rights. *See generally id.*

On March 15, 2024, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

2

*STATEMENT OF THE CASE*

I.      *The Facts*

The evidence at trial established the following:

On March 12, 2004, petitioner Michael Young was released from prison to parole supervision that was set to last until March 11, 2011.  Dkt. 16 at 5.  Young had been incarcerated pursuant to a June 10, 1998 conviction for first-degree robbery.  Dkt. 16-2 at 414.  Young met with his parole officer Ilene Staniszewski at her office for meetings twice per month.  Dkt. 16 at 5-6.  According to Staniszewski, Young was a model parolee: he was communicative, always available by telephone, and never failed to appear for their meetings.  *Id.* at 6; *see also* Dkt. 16-3 at 390.

In 2005, Zofia Rojowicka, a 54-year-old Polish immigrant, was working as a home health aide for a woman named Margaret Walters.  Dkt. 16-3 at 131.  Rojowicka worked Monday through Friday from 8:00 a.m. to 4:00 p.m., caring for Walters's husband who had multiple sclerosis and was bedridden.  *Id.*  Although Rojowicka had a long commute each day, Margaret Walters testified that Rojowicka was never late and never called out of work.  *Id.* at 134.

Rojowicka lived in New York while her husband and daughter lived overseas.  *Id.* at 132.  At all relevant times, Rojowicka lived in a first-floor apartment at 15 Chester Place in Staten Island.  Dkt. 16 at 4.  In 2005, Rojowicka sublet two bedrooms in the apartment to Aga Bizub and Ian Thompson.  Dkt. 16-3 at 113-14, 119.  With the

exception of the bedrooms, the other rooms in the apartment -- the kitchen, bathroom, and living room -- were communal.  *Id.* at 126.

Bizub was leaving the apartment on Sunday, December 4, 2005, when she saw Thompson also leaving with a younger man who appeared to be 5 foot 4 with an athletic build.  *Id.* at 115-16.[1]  On Monday, December 5, 2005, Rojowicka worked her regular hours for the Walters.  *Id.* at 134.  The next day, December 6, 2005, Rojowicka did not show up for work.  *Id.* at 135.  She had not asked for the day off and had not alerted the Walters that she would be late or miss work.  *Id.* at 134-35.  Margaret's several calls to Rojowicka went unanswered.  *Id.* at 135.

Two days later, on December 8, 2005, Rojowicka's friend Michael Howley reported Rojowicka missing to the New York Police Department (the "NYPD").  Dkt. 16 at 5.  On December 13, 2005, Officer Bruce Tulloch of the NYPD's Evidence Collection Unit dusted Rojowicka's apartment for fingerprints.  Dkt. 16-3 at 102-03.  In total, Tulloch lifted twelve prints from the apartment door, a makeup mirror, a file cabinet, a Bacardi liquor bottle, a plastic box, and a chrome flask.  *Id.* at 102-04.  Subsequent analysis yielded five prints of value (meaning that those prints could be used to make an identification by comparison to a known print) from the mirror, plastic box, and liquor bottle, *id.* at 155, 159, and two of those five prints belonged to Rojowicka.  *Id.* at

---

[1]     At trial, Bizub was unable to identify Young as the man she saw leaving the apartment with Thompson.  Dkt. 16-3 at 121.  Staniszewski, Young's parole officer, testified that Young is 5 foot 8 and "skinny."  *Id.* at 396.

155.  Though the other three prints were at the time unidentifiable, Detective Cynthia Ramirez, the NYPD fingerprint specialist who conducted the analysis, later confirmed that they did not belong to Young.  *Id.*

On the night of December 14, 2005, at around 9:00 p.m., employees of the Kent Theater on Coney Island Avenue in Brooklyn were taking out the trash when they discovered a body in a barrel in the alley behind the theater and called the police.  Dkt. 16 at 7; Dkt. 16-3 at 37.  Detective Christopher Florio of the NYPD's Crime Scene Unit arrived at 10:00 p.m. to process the alleyway as a crime scene.  Dkt. 16-3 at 37.  Florio brought the metal top and securing ring of the barrel into his car so that the metal could warm to room temperature, because it is "near impossible to get a fingerprint off of a cold surface."  Dkt. 16-3 at 47.  Investigators did not recover any latent fingerprints from either the securing ring or the lid of the barrel, *id.* at 48, and no other part of the barrel was tested for fingerprints, *id.* at 53.  Subsequent analysis, again by Detective Ramirez, revealed that a latent palm print on the lid of the barrel did not belong to Young.  *Id.* at 152-54.[2]  Detective James Normile arrived at the scene and observed a leg of the body wrapped in red and white bedsheets.  Dkt. 16 at 7.  The body was transported in the barrel to the Kings County Medical Examiner's Office for identification and an autopsy.  *Id.* at 7-8.

---

[2]    Neither the palm print nor the fingerprints lifted from the apartment were compared to Ian Thompson or Michael Howley's prints.  Dkt. 16-3 at 165-66.

On December 15, 2005, Detective Gray of the 120th Precinct in Staten Island read a newspaper article about the discovery of the body in Coney Island.  *Id.* at 7.  Detective Gray, who had been assigned to investigate Rojowicka's disappearance, contacted and met Detective Normile at the medical examiner's office.  Dkt. 16-3 at 311-12.  Gray compared a photograph of Rojowicka to the body and concluded that the body matched Rojowicka's appearance.  Dkt. 16 at 8.  Certain jewelry Rojowicka wore -- including necklaces and several rings -- were also found on the body.  *Id.* at 8, 10.

That day, Senior Medical Examiner Floriana Persechino performed an autopsy on Rojowicka's body.  *Id.* at 8.  The body was unclothed, wrapped in two comforters, two floral sheets, and a red flannel sheet, and was cold to the touch -- almost frozen.  *Id.*  The autopsy concluded that Rojowicka, who was 5 foot 2 and 137 pounds, died by manual strangulation.  *Id.*  Based on abrasions and bruises on Rojowicka's face, hands, and limbs, Persechino opined that Rojowicka may have been conscious for about 20 seconds while being strangled, during which time she could have struggled with her assailant.  *Id.* at 8-9.  Moreover, the body's pattern lividity -- *i.e.,* the settling of blood after death to the lowest point in the body -- was consistent with being placed head-first into the barrel in which Rojowicka was found.  *Id.* at 9.  Persechino concluded that Rojowicka had been dead for an indeterminable amount of time before she was found, but because her body was discovered outside in below-

freezing conditions, the cold temperature had apparently slowed the body's decomposition.  *Id.* at 10.

On December 16, 2005, Staniszewski issued a parole warrant after failing to hear from Young.  *Id.* at 6.  On December 14, 2005, Young did not show up for a parole meeting with Staniszewski, which they had scheduled at the end of his last meeting on November 16, 2005.  *Id.*  The same day, Detective Daniel Boggiano of the NYPD's crime scene unit arrived at Rojowicka's apartment to process it as a crime scene.  Dkt. 16-3 at 79.  There was no sign of forced entry into either the apartment's main entrance or Rojowicka's bedroom.  Dkt. 16 at 11.  Rojowicka's room appeared to be "ransacked," Dkt. 16-3 at 85 -- a mattress and box spring were missing from the bed frame, *id.* at 86, clothes were strewn on the floor, and other objects were in disarray.  *Id.* at 87-88.  There was no visible blood.  *Id.* at 96.

Police discovered documents and items belonging to Young -- including a license plate -- in Rojowicka's apartment, though there was no evidence presented at trial on the specific room in which they were found.  Dkt. 16 at 11.[3]  In his conversation with Bizub, Normile learned that Bizub had last seen Rojowicka on December 4, 2005, the same day she observed Thompson leaving the apartment with a younger man.  *Id.*

---

[3]     The trial record does not indicate the content of the papers belonging to Young -- the only witness to testify about the documents recovered from Rojowicka's apartment was Detective Normile, who merely described them as "[p]ersonal papers" identified as belonging to Young.  Dkt. 16-3 at 359; *see also id.* at 361.

at 12.  Normile also spoke to Thompson, who told Normile that he was Young's uncle.
*Id.*

   Normile began searching for Young and discovered that Young left the country on December 22, 2005, when he flew from Miami, Florida to Montego Bay, Jamaica.  *Id.* at 12.  According to American Airlines records presented at trial, Young purchased round-trip plane tickets to Jamaica with cash using the name Michael Young on the morning of the flight -- though the return ticket for January 19, 2006 was never used.  Dkt. 16-3 at 205-06; Dkt. 16 at 12.

   For the next eight years -- from March 2006 through May 2014 -- Normile continued his search for Young, running computer searches every three to six months and maintaining contact with federal agencies in case Young reentered the country. Dkt. 16 at 13.  Normile even traveled to Pembroke Pines, Florida, to speak with Nicole Jones, the mother of one of Young's children.  *Id.*  Normile informed Jones of the parole warrant for Young and told Jones that he was going to continue looking for Young.  *Id.*

   On June 10, 2014, over eight years after Rojowicka's body was discovered, Deputy Sheriff Jerry Barnes of Clayton County, Georgia, who worked on the United States Marshals Office's southeast regional fugitive task force, received notice that Young was reentering the United States on a flight to Atlanta from Belize.  Dkt. 16-3 at 210-12.  Barnes had no knowledge of the homicide investigation in New York.  *Id.* Barnes went to the airport, where he took custody of Young from two officers of the

Belize police.  *Id.* at 212-13.  While driving Young to the Clayton County jail, Barnes

asked Young about Belize because Barnes had wanted to travel there.  *Id.* at 214.  Young

replied that Belize is a "beautiful country," *id.*, that Barnes would "love it," and that it

was "expensive."  *Id.* at 214, 218.  Eventually during this exchange, Young stated,

unprompted, that he had turned himself in to the United States embassy in Belize

because he "got tired of running," *id.* at 214-15, and "tired of looking over his shoulder."

*Id.* at 219.

Later that day, Normile learned that Young had reentered the country and

was en route to New York pursuant to the parole warrant.  On June 20, 2014, Normile

and his colleague Detective Lou Yero met Young at Rikers Island.  Yero asked, "Hey,

when did you get back?" to which Young responded, "I came back from Georgia.  I was

down in Central America.  They brought me back a couple of days ago and I was

looking to put this all behind us."  *Id.* at 326-27.

Detective Cynthia Ramirez of the NYPD's latent print section compared

Young's finger and palm prints to the prints recovered from the shipping container and

objects in Rojowicka's room.  Dkt. 16 at 14.  None were his.  *Id.*  Hurricane Sandy

destroyed other pieces of evidence containing possible DNA, including the bedding in

which Rojowicka's body was wrapped, a plastic bottle, and two cigarette butts.  Dkt. 16-

3 at 186-90.  Investigators noticed reddish brown stains under Rojowicka's fingernails,

and subsequent scrapings of the nail clippings yielded a "hit" for Young's DNA.  Dkt. 16 at 15.

## II.     The State Court Proceedings

### A.     The Indictment and Pre-trial Proceedings

A 2014 Richmond County indictment charged Young with second-degree murder in violation of N.Y. Penal Law § 125.25(1).

The district court held a suppression (*Huntley*) hearing on February 20, 2015.  Dkt. 16-2 at 350.  Detective Normile testified to interviewing Young at Rikers on June 20, 2014.  *Id.* at 350-60.  The court continued the hearing on March 23, 2015.  *Id.* at 361.  Investigator Jerry Barnes testified to his involvement with picking Young up from the airport.  *Id.* at 363-72.

On April 7, 2015, the trial court made the following findings of fact based on Normile and Barnes's testimony.  *Id.* at 375.  On June 8, 2014, Barnes was informed that Young was wanted on a New York state parole warrant and would be arriving at Atlanta airport on flight 695 from Belize.  *Id.* at 376-77.  Upon taking custody of Young and taking Young through border control, Barnes handcuffed Young and drove Young to the Clayton County Sheriff's Office in Atlanta.  *Id.* at 377.  While driving, Barnes said that "Belize [is] a beautiful place."  *Id.*  Young responded that the country was nice but expensive.  *Id.*  He also stated that he surrendered to the embassy in Belize because he was "tired of running and looking over his shoulder."  *Id.*

Based on those findings of fact, the court concluded that Young was in custody for the entire time that Barnes, Normile, and Yero were with him.  *Id.* at 379. Barnes was not required to give Young *Miranda* warnings, however, because the statement that "Belize is a beautiful country" was not reasonably likely to evoke an incriminating response.  *Id.*  The court determined that Young's statements in response were spontaneous and not the result of an interrogation.  *Id.*  Moreover, the court determined that Young's statements to Yero were also not the product of interrogation, because the question "When did you come back" was not reasonably likely to evoke an incriminating response from Young.  *Id.* at 380.

### B.  *Trial*

Trial began on May 14, 2015.  Dkt. 16-3 at 1.  The jury heard testimony from Detective Christopher Florio, a crime scene detective, *id.* at 33-59; Sergeant Joseph LaFata, *id.* at 60-74; Detective Daniel Boggiano, *id.* at 77-100; Officer Bruce Tulloch, *id.* at 100-11; Bizub, *id.* at 111-28; Margaret Walters, *id.* at 130-45; Detective Cynthia Ramirez, who testified as an expert in fingerprint identification, *id.* at 145-69; Detective Patricia O'Brien, an NYPD detective assigned to the Staten Island District Attorney's office who took a buccal swab from Young in April 2015, just before trial commenced, *id.* at 177-82; Sergeant John Trzcinski, an officer in NYPD's property clerk division who explained how some evidence was destroyed by Hurricane Sandy, *id.* at 182-201; Leile Ting, a compliance employee for American Airlines who testified to a subpoena the airline

11

received regarding Young's travel, *id.* at 201-08; Deputy Jerry Barnes, of the Clayton County Sheriff's Office, *id.* at 210-19; Dr. Noelle Umback, an NYPD criminalist who testified to DNA testing results, *id.* at 235-303; Detective James Normile, *id.* at 306-62; Ilene Staniszewski, Young's parole officer, *id.* at 368-400; and Dr. Floriana Persechino, the medical examiner who performed Rojowicka's autopsy and testified as an expert in forensic pathology, *id.* at 402-85.  The prosecution rested on May 20, 2015.  *Id.* at 506. Young did not testify and the defense did not present a case.  *Id.* at 496-97.

On May 26, 2015, after two days of deliberations, *see id.* at 607-08, the jury sent a note to the court that read: "[W]e have been deliberating since Thursday and we are at an impasse."  *Id.* at 655.  The trial court gave the jury a "soft" *Allen* charge.  *Id.* at 656-58.[4]  On May 27, 2015, the trial court gave a full *Allen* charge.  *Id.* at 665-71.  Later that day, the jury reached a verdict, finding Young guilty of second-degree murder.  *Id.* at 671-73.

## C.    Sentencing

On August 17, 2015, the trial court sentenced Young.  *Id.* at 697.  The court first addressed a predicate felony statement filed by the prosecution, which alleged that

---

[4]      In *Allen v. United States*, the Supreme Court "approved of supplemental instructions given to a deadlocked jury urging them to continue deliberating and for the jurors in the minority to listen to the majority's arguments and ask themselves whether their own views were reasonable under the circumstances," *Spears v. Greiner*, 459 F.3d 200, 204-05 (2d Cir. 2006) (citing *Allen v. United States*, 164 U.S. 492, 501 (1896)).  Modified or "soft" *Allen* charges, "in contrast to the so-called traditional *Allen* charge," do not specifically address the minority jurors. *Lowenfield v. Phelps*, 484 U.S. 231, 237-38 (1988) (internal citation and quotation marks omitted).

Young was a second felony offender based on a prior first-degree robbery conviction. *Id.* at 699.  Young admitted that he was convicted of that felony, and the court adjudicated Young a second violent felony offender.  *Id.* at 700.  The court sentenced Young to an indeterminate term of twenty-five years to life imprisonment and ordered the sentence to run consecutively to the time that Young owed on his sentence for his first-degree robbery conviction.  *Id.* at 705-06.

### D.   Direct Appeal

Young appealed his conviction to the Appellate Division, Second Department, asserting the following claims: (1) the evidence was legally insufficient as to his identity and venue; (2) the admission of unduly prejudicial evidence highlighting his criminal record, police testimony that implied a non-testifying witness had identified appellant as the perpetrator, and photographs of Rojowicka taken while she was alive and 46 autopsy photographs all denied Young a fair trial; (3) the prosecutor committed misconduct when she claimed during summation that a non-testifying witness had identified Young as the perpetrator; and (4) trial counsel was ineffective. Dkt. 1 at 23.

On January 9, 2019, the Appellate Division affirmed Young's conviction but modified the judgment by vacating his adjudication as a second felony offender. *See Young I*, 91 N.Y.S.3d at 254.  The Appellate Division found that, viewing the evidence in the light most favorable to the prosecution, there was legally sufficient

13

evidence to establish Young's identity as the perpetrator beyond a reasonable doubt. *Id.* The court held that the "forensic DNA evidence, coupled with the evidence of [Young's] flight shortly after the homicide," *id.* at 254-55, supported this conclusion.

As to Young's evidentiary challenges, the Appellate Division concluded that (1) evidence of Young's absconding from parole, which was admitted with limiting instructions, was properly admitted as evidence of his consciousness of guilt; (2) Detective Normile's testimony that he spoke with Nicole Jones in Florida was unpreserved as a challenge and in any event did not violate Young's confrontation rights; and (3) the district court "improvidently exercised its discretion in admitting into evidence two photographs of [Rojowicka] taken prior to her death," *id.* at 255, but the error was harmless. The Appellate Division further held that some of the prosecutor's summation remarks were improper, but because Young failed to object, the objections were unpreserved for appellate review, and the error was harmless in any event. *Id.*

On March 12, 2019, the Court of Appeals (Fahey, *J.*) denied leave to appeal. *See Young II*, 123 N.E.3d at 829.

### E.      *State Collateral Review*

On April 14, 2020, proceeding *pro se*, Young filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10. Dkt. 16-2 at 219. Young argued that (1) the prosecutor's summation deprived him of a fair trial and violated his due process rights; (2) a detective's testimony about his conversation with a

14

non-testifying witness and the admission of DNA evidence through a witness who did not perform certain studies violated Young's confrontation rights under the Sixth Amendment; (3) trial counsel was ineffective; and (4) the prosecution made an untimely application for Young's buccal swab in violation of his rights against unreasonable search and seizure under the Fourth Amendment. Dkt. 16 at 18.

On May 13, 2020, the Richmond County Supreme Court (Garnett, *J.*) denied Young's motion to vacate the judgment in all respects. Dkt. 16-2 at 244-45. The court noted that all the claims in Young's § 440.10 motion "were either decided on direct appeal or could have been raised on direct appeal as all of the relevant facts are in the trial record." *Id.* at 244. The court also summarily denied Young's "self-serving, general claim that trial counsel was ineffective for failing to investigate and properly prepare his defense." *Id.* On December 11, 2020, the Appellate Division denied leave to appeal. Dkt. 16 at 19.

III.    *The Petition*

In the Petition dated April 28, 2020, and received by this Court on May 6, 2020, Young seeks habeas relief on the grounds raised in his direct appeal and in his motion to vacate the judgment. *See generally* Dkt. 1. Respondent opposed the Petition on June 14, 2021. Dkt. 16. Young filed a reply on September 16, 2021. Dkt. 19.

On March 15, 2024, the case was reassigned to the undersigned.

15

*DISCUSSION*

I.      *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)).  "A federal

court may reverse a state court ruling only where it was 'so lacking in justification that

there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123,

126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v.*

*Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

A federal court cannot review a habeas petition unless the petitioner "has

exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This

requirement affords state courts the "opportunity to pass upon and correct alleged

violations of its prisoners' federal rights."  *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir.

16

2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'"  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

   Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment."  *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)).  A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (1) the state court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (citation omitted), and (2) the state procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466 U.S. 341, 348 (1984).

The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (collecting cases). Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review. *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming the denial of habeas relief where the petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal). If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

## II.     *Analysis*

In his Petition, Young contends that (1) the evidence of his guilt was legally insufficient and the verdict was against the weight of the evidence; (2) several of the trial court's evidentiary rulings deprived him of a fair trial; (3) the admission of Detective Normile's testimony concerning his conversation with Ian Thompson violated

Young's right to confront the witnesses against him; (4) trial counsel was ineffective; (5) the prosecutor's summation denied him a fair trial; and (6) the prosecution's allegedly untimely application to obtain Young's buccal swab for DNA testing violated his Fourth Amendment rights.  I address each claim in turn.

### A.   The Sufficiency of the Evidence Claim

First, Young argues that there was insufficient evidence at trial to support his conviction and that the verdict was against the weight of the evidence.  The Appellate Division considered the merits of Young's sufficiency claim on direct appeal and concluded that, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support Young's conviction.  *Young I*, 91 N.Y.S.3d at 254-55.

Because the Appellate Division disposed of Young's sufficiency of the evidence claim on the merits, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (The Supreme Court has "affirmed this approach time and time again.").  Accordingly, this Court must accord the state court's decision "substantial deference," *Fischer*, 780 F.3d at 560, and will only grant habeas relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," *Harrington*, 562 U.S. at 98.

19

The Appellate Division's decision that the evidence was sufficient to support Young's conviction was reasonable, and thus habeas relief is not available to Young on his sufficiency claim.  Defendants in a criminal trial may be convicted only upon proof establishing their guilt beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 309 (1979).  When reviewing a claim that the evidence introduced at trial was insufficient to sustain a defendant's conviction, the reviewing court applies the standard set forth in *Jackson* to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (citation omitted).  In doing so, the court defers to the jury's assessments of both "the weight of the evidence [and] the credibility of witnesses."  *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted).  Accordingly, a "[p]etitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence."  *Id.* (internal quotation marks and citation omitted).

The evidence at trial, taken together and viewed in the light most favorable to the prosecution, was legally sufficient to support Young's guilt.  To start, documents belonging to Young were found in Rojowicka's apartment, and Young's DNA was discovered under Rojowicka's fingernails, connecting him to Rojowicka's residence at the time of her death and showing that they were in physical contact with each other.  Dkt. 16-2 at 121.  *See People v. Rush*, 672 N.Y.S.2d 362, 363-64 (2d Dep't 1998)

20

(holding that, where DNA evidence was the "principal evidence implicating the defendant in the commission of the crime[]," that evidence alone could serve to prove defendant's guilt beyond a reasonable doubt).

Furthermore, Young was a model parolee until the time that Rojowicka went missing, at which point he abruptly absconded from parole, leaving a pregnant girlfriend, his job, and family behind.  *See* Dkt. 16 at 2; Dkt. 16-2 at 122.  Young left the country using a plane ticket he purchased the morning of his flight and subsequently spent over eight years in Belize until he turned himself in to the embassy.  As the Appellate Division held, a reasonable jury could find Young guilty based on this evidence.

Although Young argued in state court that there was no eyewitness evidence in the case connecting him to the crime, such evidence is not necessary to support a criminal conviction.  *See United States v. Hawkins*, 547 F.3d 66, 70-72 (2d Cir. 2008) ("[O]ur sufficiency of the evidence test must consider the government's case in its totality rather than its parts, and may be satisfied by circumstantial evidence alone.") (internal citation omitted and alteration adopted); *People v. Davis*, 363 N.E.2d 572, 573 (N.Y. 1977) ("A conviction based exclusively upon circumstantial evidence may be sustained only if the hypothesis of guilt flows naturally from the facts proved, and is consistent with them, and the facts proved exclude to a moral certainty every reasonable hypothesis of innocence.").  On this record, and even though the

prosecution's evidence was largely circumstantial, a reasonable jury could conclude
beyond a reasonable doubt that Young was guilty of murdering Rojowicka.  The
Appellate Division's determination to that effect was certainly reasonable.  Thus,
Young's sufficiency of the evidence claim provides no basis for federal habeas relief.

### B.     *The Evidentiary Claims*

Next, Young argues that the trial court erred by permitting the
prosecution to: (1) elicit testimony concerning his status as a parolee; (2) elicit testimony
about the presence of his DNA in a state database; (3) introduce 46 photographs of
Rojowicka's autopsy; and (4) introduce two photographs of Rojowicka while she was
alive.  The Appellate Division addressed these evidentiary challenges on the merits,
ruling that (1) the trial court did not improvidently exercise its discretion when it
authorized the admission of evidence that Young, after regularly appearing for parole
appointments, absconded and fled the country; (2) Young's objection to evidence of his
DNA in a state databank was without merit, as was (3) his objection to the introduction
of photos of Rojowicka's autopsy; and (4) the trial court improvidently exercised its
discretion in admitting the two photographs of Rojowicka while she was alive, but the
error was harmless because there was "overwhelming evidence of [Young's] guilt" and
"no significant probability that the error affected the verdict."  *Young I*, 91 N.Y.S.3d at
255.

Purported evidentiary errors in a state court trial are rarely a basis for habeas relief.  The Supreme Court has acknowledged its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  As trial judges are "called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence" in any given criminal trial, "the Constitution leaves to the judges who must make these decisions 'wide latitude'" in ruling on the admissibility of evidence.  *Id*. at 689-90 (citation omitted).

Consequently, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus.  Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citations omitted).  The erroneous admission of evidence constitutes a denial of due process "only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (citation omitted).

Here, the trial court's decision to admit evidence of Young's parolee status, subject to a limiting instruction, *see* Dkt. 16-3 at 329-30, was eminently reasonable and is entitled to deference.  Evidence that Young was a "good parolee" until he abruptly absconded shortly after Rojowicka's death was relevant to and probative of

Young's consciousness of guilt. *Id.* at 390.  The trial court's decision to admit evidence that Young's DNA was present in a database was also reasonable because that evidence was relevant to establishing Young's identity.  *See People v. Morris*, 999 N.E.2d 160, 166-67 (N.Y. 2013) (affirming admission of a 911 call in which the caller gave a description of defendant because that call provided background information explaining law enforcement's behavior and was "probative" of police conduct).  Similarly, the autopsy photographs were relevant and not overly prejudicial or inflammatory.  The photographs served to both prove the manner of Rojowicka's death as well as corroborate the medical examiner's testimony.  It was reasonable for the trial court to admit photographs of the autopsy where Rojowicka's manner of death was disputed at trial.  *See* Dkt. 16-2 at 161-63.

As to the photographs introduced of Rojowicka when she was alive, the Appellate Division concluded that the trial court abused its discretion in admitting the photographs, but that the error was harmless given the overwhelming evidence of Young's guilt.  On habeas review, this Court employs an "actual prejudice" analysis, wherein an error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  On this record, and considering the evidence of his guilt presented at trial, Young cannot show that the photographs of Rojowicka, even assuming they were erroneously admitted, caused him

24

actual prejudice.  Accordingly, and because the trial court's evidentiary rulings were

reasonable, habeas relief is unavailable to Young on his evidentiary claims.

      *C.*      *The Confrontation Claim*

      Next, Young claims that portions of Detective Normile's testimony

deprived him of his confrontation right under the Sixth Amendment.  Specifically,

Young objects to the trial court's decision to admit Thompson's statement to Normile

that Thompson and Young were related.  *See* Dkt. 16-3 at 316-17 (Normile testifying that

Thompson said he was Young's uncle).  Thompson did not testify at trial.  Young

argues in his Petition, as he argued on direct appeal, that this testimony violated his

confrontation right because a jury "could infer that Thompson identified [Young] as the

perpetrator." Dkt. 1 at 84.  The Appellate Division considered the claim on direct appeal

and concluded that CPL § 470.05(2) procedurally barred the challenge because Young

failed to preserve it for appellate review.  *Young I*, 91 N.Y.S.3d at 255.  The Appellate

Division further noted, however, that Young's argument was without merit.

      Habeas relief is thus not available to Young for his confrontation claim.

For an independent and adequate state ground to bar habeas relief, the state court

rendering the judgment must "clearly and expressly state that its judgment rests upon a

state procedural bar." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Glenn v.

Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).  Here, the Appellate Division clearly and

expressly stated that Young's confrontation claim regarding Normile's testimony was unpreserved for appellate review. *Young I*, 91 N.Y.S.3d at 255.

Moreover, Young has failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted); *Coleman*, 501 U.S. at 748; *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

Young's confrontation claim fails on the merits in any event. As explained above, purported evidentiary errors in a state court trial are rarely a basis for habeas relief. Here, the trial court's decision to admit Normile's testimony concerning his conversation with Thompson is entitled to deference. Following a conference with counsel regarding the testimony, the trial court gave the jury a limiting instruction. Dkt. 16-3 at 316. The trial court instructed the jury that Normile's testimony, wherein he repeated to the jury what Thompson said to him, was not being offered for the truth (*i.e.*, that Young and Thompson are, in fact, related), but rather "to indicate how the investigation developed in this case." *Id.* Detective Normile's testimony thus does not present a confrontation issue because it was not admitted for its truth. *See Crawford v. Washington*, 541 U.S. 36, 59 n.6 ("The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter

asserted.").  The trial court's decision to admit Normile's testimony about his

conversation with Thompson was reasonable as the testimony explained how the

investigation began.  Because the statement was not offered for its truth, and the jury

was properly given a limiting instruction, the testimony presents no confrontation

issue.  Accordingly, habeas relief is unavailable for Young's confrontation claim.

### D.    *The Ineffective Assistance of Counsel Claim*

As he argued on direct appeal and in his section 440.10 motion, Young

claims that trial counsel was ineffective because he (1) failed to request a missing

witness charge for Ian Thompson; (2) failed to object to the admission of DNA evidence;

(3) allegedly introduced evidence found at the crime scene; (4) failed to object to

Detective Normile's allegedly impermissible hearsay testimony; (5) failed to object to

the prosecutor's summation; and (6) failed to conduct an investigation and prepare for

trial.  Dkt. 1 at 88-100.  All challenges to trial counsel's performance are meritless, and

habeas relief is thus unavailable, for the reasons stated below.

In general, to prevail on a claim of ineffective assistance under federal law,

a petitioner must (1) show that counsel's performance was so deficient as to fall below

"an objective standard of reasonableness"; and (2) establish prejudice by demonstrating

a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694

(1984).  In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a

state court's application of *Strickland* was unreasonable . . . is all the more difficult.  The

standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when

the two apply in tandem, review is 'doubly' so."  *Harrington*, 562 U.S. at 105 (collecting

cases).  Therefore, "[t]he operative question" when a federal court reviews a state court's

ineffective assistance of counsel ruling is "not whether [the] federal court believes the

state court's determination was incorrect, but rather whether that determination was

objectively unreasonable . . . ."  *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

   The standard for establishing an ineffective assistance of counsel claim

under New York law is lower than under federal law.  *See People v. Honghirun*, 78

N.E.3d 804, 807 (N.Y. 2017).  In New York, a defendant must show only "that counsel

failed to provide meaningful representation . . . ."  *People v. Alvarez*, 125 N.E.3d 117, 120

(N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d

400 (N.Y. 1981)).  Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the

state standard, the defendant is not required to demonstrate that he was prejudiced by

the ineffective assistance.  *See Alvarez*, 125 N.E.3d at 120.

   Young has failed to meet his burden of proving that trial counsel was

ineffective.  The record reflects that all of Young's claims of ineffective assistance of

counsel are based on trial counsel's strategic choices that are "virtually unchallengeable"

in an ineffective assistance of counsel claim.  *Strickland*, 466 U.S. at 690.  For example,

28

Young contends that trial counsel should have sought a missing witness charge for Ian Thompson, and that his failure to do so made him ineffective.  Under New York law, a missing witness charge may be appropriate where the proponent shows that "the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party."  *People v. Gonzalez*, 502 N.E.2d 583, 586 (N.Y. 1986). Here, there was no evidence that Ian Thompson had information on a material issue, that any information he would have was noncumulative, or that it was favorable to the prosecution.  Moreover, trial counsel *did* request a missing witness charge for Detective Craig Stevens, a detective who responded to the crime scene on the night that Rojowicka's body was found.  Dkt. 16-3 at 490-91.  Accordingly, although the trial court denied the request, the record still shows that trial counsel knew to request a missing witness charge where he thought one would be appropriate, and that trial counsel's evidently strategic decision to forgo requesting such a charge for Thompson does not constitute ineffective assistance.

Young also claims that trial counsel was ineffective for failing to object to the admission of DNA evidence through a witness who did not personally perform the testing.  Contrary to Young's claim, however, counsel *did* object on hearsay grounds to Noelle Umback's testimony at trial based on the fact that Umback did not personally

29

produce the DNA reports.  Dkt. 16-3 at 253-54.  The trial court overruled the objection.  *Id.* at 254.  Accordingly, Young's claim that trial counsel was ineffective for failing to object to this evidence is plainly belied by the record.[5]

          Counsel's choice to introduce evidence found at Rojowicka's apartment was also strategic and does not rise to the level of ineffective assistance.  At trial, the prosecution theorized that Young, fearing that blood or DNA were present after the crime, used his car to dispose of Rojowicka's mattress and box spring.  *See* Dkt. 16-1 at 30-31.  Defense counsel attempted to rebut this theory at trial by offering proof that Young did not own a vehicle at the time.  *Id.* at 31.  To that end, counsel introduced evidence of a license plate found at Rojowicka's apartment belonging to Jenell Herbert, who had purchased a car from Young.  Dkt. 16-3 at 357-60.  Counsel apparently introduced this evidence to rebut evidence that Young owned a car at the time of Rojowicka's death.  On redirect, the prosecution established that the license plate was found among other papers belonging to Young.  *Id.* at 361-62.  Even though defense

_____

[5]    On June 21, 2024, the Supreme Court issued an opinion holding that "[w]hen an expert conveys an absent analyst's statements in support of the expert's opinion, and the statements provide that support only if true, then the statements come into evidence for their truth," presenting a Confrontation Clause issue.  *Smith  v. Arizona*, No. 22-899, 2024 WL 3074423, at *3 (U.S. June 21, 2024).  The Court expressly declined, however, to rule on whether the absent analyst's statements were testimonial, noting that whether the statements were testimonial is "best considered by the state court in the first instance."  *Id.* at *2.  *Smith* does not affect the analysis here because Young only brings an ineffective assistance of counsel claim related to Umback's testimony.  At the time of trial, counsel did not have the guidance of *Smith*, and there is no meritorious argument that counsel was ineffective based on then-existing law.  In any event, as explained above, counsel *did* object to the testimony on hearsay and confrontation grounds during trial.

counsel may have opened the door to this unfavorable evidence on redirect, it did not

rise to the level of ineffective assistance. *See United States v. Eisen*, 974 F.2d 246, 265

(decisions by trial counsel about how and when to engage in cross-examination are

strategic in nature and, "if reasonably made, cannot support an ineffective assistance

claim").

The rest of Young's claims of ineffective assistance -- for failure to object to

certain testimony and for failure to investigate -- are denied as without merit.

E.      *The Summation Claim*

Young argues that the prosecutor's summation was improper. The

Appellate Division considered the claim on direct appeal and concluded that

CPL § 470.05(2) procedurally barred the challenge because Young failed to preserve it

for appellate review. *Young I*, 91 N.Y.S.3d at 255. The Appellate Division further noted,

however, that "[s]ome of the prosecutor's summation remarks were improper, including

the remarks regarding the purported testimony of a police detective as to his

conversations with a nonwitness, which were not fair comment on the evidence and the

inferences to be reasonably drawn therefrom." *Id.* But the court ultimately concluded

that "the cumulative effect of the improper remarks was not so egregious, flagrant, or

pervasive as to have deprived [Young] of a fair trial," *id.* at 255-56, and that "[t]he

remainder of the summation remarks challenged by [Young] constituted fair responses

31

to the defense summation, fair comment on the evidence and the reasonable inferences to be drawn therefrom, or permissible rhetorical comment." *Id.* at 256.

As with his confrontation claim discussed above, habeas relief is similarly not available to Young for his summation claim.  For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment rests upon a state procedural bar." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).  Here, the Appellate Division clearly and expressly stated that Young's objection to the prosecutor's summation was unpreserved for appellate review.  *Young I*, 91 N.Y.S.3d at 255.

Young has also failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted); *Coleman*, 501 U.S. at 748; *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

The summation claim fails on the merits in any event.  The Appellate Division's conclusion that "the cumulative effect of the improper remarks was not so egregious, flagrant, or pervasive as to have deprived [Young] of a fair trial," *Young I* at 255-56, constitutes an adjudication on the merits, *see Johnson v. Williams*, 568 U.S. 298,

32

301 (2013), and is entitled to "substantial deference." *Fischer*, 780 F.3d at 560. This Court will not disturb the Appellate Court's finding unless Young can show that it "involved an unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d)(1). Young cannot meet this high burden with respect to his prosecutorial misconduct claim.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone . . . in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985). "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted). "In order to reach the level of a constitutional violation, a prosecutor's remarks must 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "Whether a prosecutor's improper remarks result in a denial of due process depends upon whether the remarks caused 'substantial prejudice' to the defendant." *United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir. 1989) (citation omitted). To determine whether "substantial prejudice" exists, the court "must assess how prejudicial the prosecutor's conduct was, what measures, if any, the trial court used to cure the prejudice, and whether conviction was certain absent the prejudicial conduct." *Gonzalez*, 934 F.2d at 424.

During summation, the prosecution improperly argued that Thompson identified Young as his nephew. Dkt. 16-3 at 546 ("And [Detective] Normile comes in,

33

and he fills you in that Ian Thompson is the defendant's uncle.").  Defense counsel

objected and the trial court overruled the objection.  *Id.*  The Appellate Division

correctly concluded that this was error, because Thompson's statement that Young is his

nephew was not admitted into evidence for its truth.  The error did not rise to the level

of a constitutional violation, however, because Young fails to establish that the remarks

were so egregious as to deprive him of a fundamentally fair trial in light of the other

evidence of his guilt presented at trial.  Even assuming the statement that Young was

Thompson's nephew was not true, the record makes clear that there was some

connection between the two, as, indeed, Young's personal papers were found in the

apartment, where Thompson lived.  The Appellate Division's finding that the error did

not deprive Young of a fundamentally fair trial was neither contrary to nor an

unreasonable application of federal law.  Accordingly, habeas relief is not available on

this ground.

> **F.**    *The Buccal Swab Claim*

Finally, in his last claim for habeas relief, Young argues, as he did in his

section 440.10 claim, that the prosecution violated his Fourth Amendment rights when

it allegedly made an untimely motion to obtain a buccal swab for his DNA.  The trial

court summarily denied this claim.  Young's claim does not present a cognizable

question on habeas review and is therefore denied.

34

As for a habeas petitioner's claims under the Fourth Amendment, "where the State has provided an opportunity for full and fair litigation of [the] claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976).  Thus, a petitioner may obtain habeas relief arising from Fourth Amendment claims only if he either establishes that "'the state has provided no corrective procedures at all to redress the alleged fourth amendment violations,' or, 'if the state has provided a corrective mechanism,' that the petitioner 'was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Ethridge v. Bell*, 49 F.4th 674, 684 (2d Cir. 2022) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).  To establish such a breakdown, the petitioner would have to prove that "the state system 'failed to conduct a reasoned method of inquiry into relevant questions of fact and law.'" *Hicks v. Bellnier*, 43 F. Supp. 3d 214, 231 (E.D.N.Y. 2014) (citing *Capellan*, 975 F.2d at 71).

Habeas relief, however, is unavailable for purported Fourth Amendment violations where, as here, the state courts have provided the petitioner with a full and fair opportunity to litigate his claims.  *See Stone*, 428 U.S. at 482; *see also Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a

conclusive determination that the claim will never present a valid basis for federal habeas relief.").

Federal review of Fourth Amendment claims in habeas petitions may only be undertaken in two instances, neither of which Young has shown to be applicable here. *See Capellan*, 975 F.2d at 70.  Young has not shown that "the state has provided no corrective procedures at all to redress the alleged fourth amendment violations," as the Second Circuit has long held that New York's procedure for litigating Fourth Amendment claims is facially adequate. *Id.* at 70 n.1 (collecting cases); *Daily v. New York*, 388 F. Supp. 2d 238, 249 (S.D.N.Y. 2005) ("The State of New York clearly has provided defendants . . . with the necessary corrective procedures through Section 710 of the New York Criminal Procedure Law.").  Therefore, because New York has provided a "corrective mechanism," Young may only obtain habeas relief if he can establish that he was "precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Ethridge*, 49 F.4th at 684.  Here, Young has failed to show either a lack of a corrective procedure to address potential violations of his Fourth Amendment rights or an unconscionable breakdown in the underlying process.  Accordingly, Young is not entitled to relief on this claim.

## CONCLUSION

Young has failed to show any basis for relief under 28 U.S.C. § 2254.  Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of

36

appealability because Young has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Pursuant to 28 U.S.C. § 1915(a)(3), I

certify that any appeal taken from this decision and order would not be taken in good

faith.

The Clerk of Court is respectfully directed to mail a copy of this opinion

and the judgment to Young at his last address of record.

SO ORDERED.

Dated:     New York, New York
           June 28, 2024

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation